# RECORD NO. 19-2419

In The

# United States Court Of Appeals
# For The Fourth Circuit

## GLEN K. ALLEN,

*Plaintiff – Appellant,*

v.

## HEIDI BEIRICH; MARK POTOK;
## THE SOUTHERN POVERTY LAW CENTER, INC.,

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

_____

## REPLY BRIEF OF APPELLANT

_____

Glen K. Allen
GLEN K. ALLEN LAW
502 Edgevale Road
Baltimore, MD 21210
(410) 802-6453

Frederick C. Kelly, III
LAW OFFICE OF
  FREDERICK C. KELLY
One Harriman Square
Monroe, NY 10950
(845) 294-7945

*Counsel for Appellant*

*Counsel for Appellant*

## TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ...............................................................................1

ARGUMENT .....................................................................................4

     I.    ALLEN'S DECLARATORY JUDGMENT CLAIM DOES NOT ENCROACH ON AUTHORITY EXCLUSIVELY RESERVED FOR THE INTERNAL REVENUE SERVICE .............4

     II.    THE SPLC DEFENDANTS CANNOT IMMUNIZE THEIR UNLAWFUL CONDUCT BEHIND THE *BARTNICKI* FIRST AMENDMENT PRIVILEGE ............................................6

     III.   ALLEN'S COMPLAINT PLEADED VIABLE CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE, NEGLIGENT SUPERVISION, AND RESTITUTION IN ACCORDANCE WITH THE *HUSTLER / FOOD LION* DOCTRINE ...............................................11

     IV.   THE SPLC DEFENDANTS' OWN STATEMENTS, AND THE SPLC'S STATUS AS A 501C3 NONPROFIT, SHOW THAT THEIR DEFAMATORY ACCUSATIONS AGAINST ALLEN IN THE SPLC'S HATE MAP FLYER WERE NOT MERE HYPERBOLE AND RHETORIC.......................................15

     V.    ALLEN'S RICO CAUSES OF ACTION WERE PROPERLY PLED, BUT EVEN IF THIS COURT DISAGREES, PRECEDENT FAVORS LEAVE TO RE-PLEAD ...........................20

     VI.   ALLEN PROPERLY PLEADED HIS TORTIOUS INTERFERENCE WITH CONTRACT AND AIDING AND ABETTING BREACH OF CONTRACT CLAIMS..........................25

CONCLUSION ....................................................................................................28

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Baron Financial Corp. v. Natanzon*,
  471 F. Supp. 2d 535 (D. Md. 2006)................................................................25

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001 .....................................................................................*passim*

*Berry and Gould, P.A. v. Berry,*
  360 Md. 142 (2000) .......................................................................................13

*Beverly Hills Foodland, Inc. v. United Food and
Commercial Workers Union, Local 655*,
  39 F.3d 191 (8th Cir. 1994) ........................................................................12

*Boehner v. McDermott*,
  332 F.Supp.2d 149 (D.D.C. 2004), *aff'd,*
  *Boehner v. McDermott*, 441 F.3d 1010 (D.C. Cir. 2006),
  *vacated for en banc hearing,* D.D.C. June 23, 2006, and *aff'd,*
  *Boehner v. McDermott*, 484 F.3d 573 (D.C. Cir. 2007) (*en banc*) ............ 8-9

*Bowley v. City of Uniontown Police Dep't*,
  404 F.3d 783 (3rd Cir. 2005) .......................................................................10

*Burrell v. Akinola*,
  2016 WL 3523781 (N.D. Tex. June 27, 2016)..............................................7

*Chapin v. Knight-Ridder, Inc.*,
  993 F.3d 1087 (4th Cir. 1993) ......................................................................19

*Chisolm v. TranSouth Financial Corp.*,
  95 F.3d 331 (4th Cir. 1996) ..........................................................................21

*Cohen v. Cowles Media, Inc.*,
  501 U.S. 663 (1991)......................................................................................14

iii

*Desnick v. ABC*,
    44 F.3d 1347 (7th Cir. 1995) ..........................................................................12

*Edwards v. Schwartz*,
    378 F. Supp. 3d 468 (W.D. Va. 2019) ...........................................................1

*Florida Star v. B.J.F.*,
    491 U.S. 524 (1989)..........................................................................................9

*Foretich v. Advance Magazine Publishers, Inc.*,
    765 F. Supp. 1099 (D.D.C. 1991)..................................................................12

*Frydman v. Verschleiser*,
    72 F. Supp. 3d 653 (S.D.N.Y. 2016) .............................................................23

*Fulani v. League of Women Voters*,
    882 F.2d 621 (2nd Cir. 1989)......................................................................5, 6

*GE Investment Private Place Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001) ........................................................................24

*Gentile v. State Bar of Nevada*,
    501 U.S. 1030 (1991) ....................................................................................15

*Goldfarb v. Mayor and City of Baltimore*,
    791 F.3d 500 (4th Cir. 2015) ......................................................................1-2

*Hall v. DIRECTTV, LLC.*,
    846 F.3d 757 (4th Cir. 2017..........................................................................8

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1984)......................................................................................16

*Houck v. Substitute Trustee Services, Inc.*,
    791 F.3d 473 (4th Cir. 2015) ........................................................................26

*Ideal Steel Supply Corp. v. Anza*,
    652 F.3d 310 (2nd Cir. 2011)..................................................................20, 25

*In re Alexander*,
    324 B.R. 82 (E.D. Va. 2014) ..........................................................................1

*In re Vericker*,
446 F.2d 244 (2nd Cir. 1971)..............................................................21

*Jean v. Massachusetts Police, et al*.,
492 F.3d 24 (1st Cir. 2007)..............................................................8, 9

*Keyishan v. Board of Regents*,
385 U.S. 589 (1967)..............................................................................3

*Kimm v. Lee*,
2005 WL 89386, (S.D.N.Y. Jan. 13, 2005), *aff'd*,
196 Fed. Appx. 14 (2nd Cir. 2006)..............................................22, 23

*King v. Capital One Bank (USA)*,
2012 WL 5570624, No. 3:11-cv-00068 (W.D. Va. Nov. 15, 2012) ..............5

*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829 (1978)..............................................................................9

*Milkovich v. Lourain Journal Co*.,
497 U.S. 1 (1990).................................................................................19

*Morley v Cohen*,
888 F.2d 1006 (4th Cir. 1989) ..........................................................24

*New York Times v. United States*,
403 U.S. 713 (1971)...............................................................................9

*O'Donnell v. CBS, Inc.*,
782 F.2d 1414 (7th Cir. 1986) ..............................................................9

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1964)........................................................................ 17-18

*Perdue Farms v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*.,
2005 WL 1316959 (4th Cir. June 2, 2005)........................................27

*Planned Parenthood Federation of America, Inc. v.*
*Center for Medical Progress*,
735 Fed. Appx. 241(9th Cir. 2018), *affirming*,
214 F. Supp. 3d 808 (N.D. Cal. 2016)................................................27

*Polacsek v. Debticated Consumer Counseling, Inc.,*
413 F. Supp. 2d 539 (D. Md. 2005)................................................................5

*Republic of Kazakhstan v. Does 1-100,*
2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015)................................................10

*Reuber v. Food Chem. News, Inc.,*
925 F.2d 703 (4th Cir. 1991) ........................................................................10

*Rosenblatt v. Baer,*
383 U.S. 75 (1986)........................................................................................10

*Rutan v. Republican Party of Illinois,*
497 U.S. 62 (1990)........................................................................................11

*Ruzicka v. Conde Nast Publications, Inc.,*
999 F.2d 1315 (8th Cir. 1993) ......................................................................14

*Sher v. SAF Financial, Inc.,*
2010 WL 4034272 (D. Md. Oct. 14, 2010)...................................................26

*Southridge Capital Management, LLC v. Lowry,*
188 F. Supp. 2d 388 (S.D.N.Y. 2002)...........................................................27

*Smith v. Daily Mail Publishing Co.,*
443 U.S. 97 (1979)..........................................................................................9

*Smithfield Foods, Inc. v. United Food & Comm. Workers Int'l Union,*
585 F. Supp.2d 815 (E.D. Va. 2015) ............................................................20

*Taylor v. Carmouche,*
214 F.3d 788 (7th Cir. 2000) ...................................................................15, 16

*Unelko Corp. v. Rooney,*
912 F.2d 1049 (9th Cir. 1990) ......................................................................12

*United States v. Bottone,*
365 F.2d 389 (2nd Cir. 1966)........................................................................22

*United States v. Farraj,*
142 F. Supp. 2d 484 (S.D.N.Y. 2002) ..........................................................22

*United States v. Morrison*,
    844 F.2d 1057 (4th Cir. 1988) ........................................................10

*United States v. Parise*,
    159 F.3d 790 (3rd Cir. 1998) ........................................................22

*United States v. Thompson,*
    562 F.3d 387 (D.C. Cir. 2009)........................................................27

*United Technologies Corp. v. Mazer,*
    556 F.3d 1260 (11th Cir. 2009) .......................................................7

*Veilleux v. National Broadcasting Co*.,
    206 F.3d 92 (1st Cir. 2000)........................................................12

*Wright v. North Carolina*,
    787 F.3d 256 (4th Cir. 2015) ........................................................26

*Zerillo v. Evening News Ass'n,*
    628 F.2d 217 (D.C. Cir. 1980)........................................................9

*Zimmerman v. Cambridge Credit Counseling Corp.,*
    529 F. Supp.2d 254 (D. Mass. 2008), *aff'd sub nom.*
    *Zimmerman v. Pucchio*, 601 F.3d 60 (1st Cir. 2010) ......................................5

*Zimmerman v. Cambridge Credit Counseling*,
    409 F.3d 473 (1st Cir. 2005)........................................................4, 5

**Constitutional Provision:**

U.S. Const. amend. I ................................................................*passim*

**Statutes and Code Provisions:**

18 U.S.C. § 2315 (Stolen Property Act) ................................................................22

18 U.S.C. § 1952 (Travel Act)................................................................21

Alabama Code - § 13A-8-16 (Alabama's Receipt of Stolen Property Act) ............21

**Other Authority:**

Revenue Procedure,
    Rev. Proc. 92-59 (1992) 1992 WL 509835 ..................................................15

# INTRODUCTION

If this case is to be decided based on whether Glen Allen entertains, or once entertained, or once seemed to entertain thoughts offensive to many, he will lose. Perhaps unfortunately for him, from a young age he has had a propensity to thought crimes. But the critical question is whether committing thought crimes is a proper basis for deciding this case.

The SPLC Defendants obviously think it is. Adopting practices for which they have been reprimanded in the past, JA 63-64, they have, with a seeming sense of impunity, employed numerous inappropriate tactics for portraying Allen as a conspiratorial, knuckle dragging racist unworthy of employment at the Baltimore City Law Department, or indeed anywhere. These include:

**Citing matters outside the record**: *E.g.*, newspaper articles about Allen, SPLC Br. at 3, 4; statements about the "founder" of the American Eagle Party, *id.* at 4,8; excerpts from the SPLC's own articles about the National Alliance, *id.* at 6; factual findings of other courts, *id.* at 3-5. These are not appropriate matters for judicial notice and the SPLC did not properly seek judicial notice. *See Edwards v. Schwartz,* 378 F. Supp. 3d 468, 501, 519 n. 29 (W.D. Va. 2019) (no judicial notice of contents of newspaper articles); *In re Alexander*, 324 B.R. 82, 88 (E.D. Va. 2014) (no judicial notice of other courts' factual findings); *Goldfarb v. Mayor and City of*

1

*Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (judicial notice must not be used as expedient to consider matters outside pleadings).

**Inaccurately portraying Dilloway as a "whistleblower."** Characterizing Dilloway's sale of National Alliance ("NA") confidential information to the SPLC as the actions of a "whistleblower" implies the SPLC is an impartial quasi-governmental organization. Nothing could be further from the truth. Moreover, as explained in Allen's complaint, the SPLC's "whistleblowing" rationale is blatantly pretextual. The SPLC claimed Dilloway was disclosing NA tax fraud but the IRS has never charged the NA with tax fraud and the stolen Dilloway information the SPLC used against Allen had nothing to do with tax fraud. JA at 37-42.

**Repeatedly contradicting themselves.** The SPLC is a reliable source of accurate factual information about "hate groups"; actually, its statements in its Hate Map are not factual but mere "hyperbole and rhethoric." Allen cannot be trusted to defend the City of Baltimore against a $20 million lawsuit brought by a black man (Burgess) because Allen would work too zealously to help the City win the case (which it later lost); actually, Allen is an unethical lawyer, who won't work zealously enough for the (largely black) City and should be fired. The stolen Dilloway information is a matter of urgent public concern; actually, this case "involves run-of-the-mill business records." SPLC Br. at 25. Allen was a well

known neo-Nazi;   actually, "nobody knew of his involvement with white supremacist groups, except for us."

**Implying the Court should decide against Allen because of his links to the National Alliance**.  Allen denies that any commitment to or expectation of unlawful conduct was ever entailed in NA membership.   Moreover, insofar as Allen performed legal work for the NA, his aim was to encourage and ensure compliance with all legal requirements.  In any event, as the Supreme Court stated in *Keyishan v. Board of Regents*, 385 U.S. 589, 606 (1967) (internal quotation marks and citations omitted):

> Mere knowing membership without a specific intent to further the unlawful aims of an organization is not a constitutionally adequate basis for exclusion from such positions as those held by appellants. . . Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees. . . Under our traditions beliefs are personal and not a matter of mere association, and . . . men in adhering to a political party or other organization . . . do not subscribe unqualifiedly to all of its platforms or asserted principles.

The SPLC Defendants' tactics are wholly inappropriate but unfortunately not wholly ineffective.  They act like a distorting lens preventing a fair and objective review of Allen's claims and arguments.  When that lens is removed, for the reasons below the SPLC Defendants' arguments should fail and Allen must be accorded his day in court.

# ARGUMENT

## I.   ALLEN'S DECLARATORY JUDGMENT CLAIM DOES NOT ENCROACH ON AUTHORITY EXCLUSIVELY RESERVED FOR THE INTERNAL REVEUE SERVICE

Allen does not ask this Court to make any determination regarding the SPLC's compliance with 501c3 requirements that encroaches on exclusive authority reserved to the I.R.S.  As the First Circuit stated in *Zimmerman v. Cambridge Credit Counseling,* 409 F.3d 473, 477 (1st Cir. 2005), it is "common for courts and administrative agencies to examine whether an entity actually operates as a nonprofit, irrespective of its tax-exempt status."  This is such a case.

As Allen explained in his initial brief, the SPLC's status as a 501c3 nonprofit imparts to it the implied *imprimatur* of the government and makes news reporters, employers, and the public much more disposed to credit its accusations.  Allen has been a victim of this unmerited gravitas; he was fired within a day of the the SPLC's August 17 Article and remains vulnerable to similar SPLC attacks in the future. On these facts, the declaration Allen seeks, i.e., that the SPLC has acted in numerous respects in violation of the requirements for a 501c3, would dissuade the SPLC from improperly attacking Allen again and would settle uncertainty that hangs over the relationship between Allen and the SPLC.  Allen seeks no determination as to the SPLC's tax liability.

In *Zimmerman,* the trial court held it lacked jurisdiction to determine whether the defendants were operating a sham 501c3 nonprofit in violation of the Credit Repair Organizations Act ("CROA"). The First Circuit reversed, holding such inquiry permissible. To be eligible for exemption under the CROA, the circuit court held, an entity "must actually operate as a nonprofit organization *and* be exempt from taxation under section 501(c)(3)," and a court can and must determine this. *Zimmerman*, 409 F.3d at 478 (emphasis in original). On remand, the trial addressed this question, holding that the defendant "did not, in fact and as a matter of law, operate as a nonprofit." *Zimmerman v. Cambridge Credit Counseling Corp*., 529 F. Supp. 2d 254, 277 (D. Mass. 2008), *aff'd sub nom. Zimmerman v. Puccio*, 601 F.3d 60 (1st Cir. 2010). The *Zimmerman* cases are not anomalies. *See also, e.g., Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 549-50 (D. Md. 2005); *King v. Capital One Bank (USA)*, 2012 WL 5570624, No. 3:11-cv-00068 (W.D. Va. Nov. 15, 2012) at * 1 n. 3.

*Fulani v. League of Women Voters*, 684 F. Supp. 1185 (S.D.N.Y. 1988), *aff'd,* 882 F.2d 621 (2nd Cir. 1989), also demonstrates why Allen's declaratory judgment claim is viable. In *Fulani*, an independent candidate for President contended that the League of Women Voter's exclusion of her from a debate violated the League's requirement under 501c3 to refrain from partisan political activity. On appeal, the

Second Circuit held Fulani had standing to challenge the League's compliance with 501c3 requirements. *Id.* at 627-28.

In Allen's case the core components of standing discussed in *Fulani* are similarly satisfied. He has alleged personal, not abstract, injury -- that the SPLC singled him out after "watching him like a hawk" and by a coordinated attack using its 501c3 clout orchestrated his termination from the City of Baltimore legal department. Further, it continues to threaten similar future attacks. He has alleged these harms are "fairly traceable to [the SPLC's] unlawful conduct" -- that the SPLC used stolen information and violated numerous ethical rules, in contravention of 501c3 requirements. And he has alleged that the declaration he seeks will deter future attacks by the SPLC, attacks that hang over him like a sword of Damocles.

## II. THE SPLC DEFENDANTS CANNOT IMMUNIZE THEIR UNLAWFUL CONDUCT BEHIND THE *BARTNICKI* FIRST AMENDMENT PRIVILEGE

The SPLC Defendants contend Allen has misinterpreted the Supreme Court's *Bartnicki* decision. But it is they who have misconstrued *Bartnicki* and its progeny.

At bottom, the SPLC Defendants assert that, under *Bartnicki*, "information is *only* 'unlawfully obtained' for First Amendment purposes where *the publishing defendant* has itself broken the law in physically obtaining the information." Opp. Br. at 21 (emphasis in original). The SPLC Defendants further contend that "the element missing from the Complaint's allegations against the SPLC, is actual

6

participation in the illegal collection of the materials from the National Alliance." *Id*. at 26. Before addressing the legal error in these assertions, two initial points are in order.

**First**, Allen, having been denied discovery, cannot know what secret interactions occurred between the SPLC Defendants and Dilloway before May 3, 2015, the date the SPLC Defendants, for their own purposes, acknowledged in their *Chaos on the Compound* article receiving stolen information from Dilloway. Allen has never conceded there were no such secret pre-May 3, 2015 interactions. To the contrary, as explained in his opening brief, the information available to him and reflected in his allegations makes it probable such interactions did occur. Allen is at an informational disadvantage in this regard, and under such circumstances it is contrary to the liberal spirit of the federal rules to dismiss his complaint without discovery. *See, e.g*, *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1272-73 (11th Cir. 2009) ("[A]t the pleading stage, [plaintiff] could not possibly have had access to the [defendant's] inside information necessary to prove conclusively—or even plead with greater specificity—the factual basis for holding [defendant] liable for Mazer's conduct. That is why we have discovery. . . [Plaintiff] is at a clear informational disadvantage"); *Burrell v. Akinola*, No. 15-CV-3568-B, 2016 WL 3523781 at * 5 (N.D. Tex. June 27, 2016) (same). Allen can perhaps be faulted for not including an information and belief allegation in his complaint as to the pre-May

7

3, 2015 interactions, but this is no ground for dismissing his complaint without opportunity to amend.  *See, e.g., Hall v. DIRECTTV, LLC*., 846 F.3d 757, 765 (4th Cir. 2017) ("[W]e have emphasized that a complaint is to be construed liberally to do substantial justice") (internal quotation marks omitted).

**Second**, the nature of the "illegal collection of materials from the National Alliance" requires an accurate focus.  Dilloway did not steal physical documents.  Rather, he copied them, leaving the documents themselves in the NA's possession.  Consequently, Dilloway's wrongdoing was not consummated until, induced by the SPLC, he disclosed the information to the SPLC.  If Dilloway had never revealed the contents of the thumb drives, his illegal conduct would never have become manifest.  The SPLC Defendants, accordingly, *did* actively participate in Dilloway's illegal conduct by playing an essential role in completing and making it manifest.

The SPLC Defendants' interpretation of *Bartnicki*, that a publishing defendant is immune from liability unless it "actually" and "physically" participated in the initial illegal acquisition of the information at issue, is far off-target.  The defendants in *Bartnicki* played no role whatever in the initial illegal wiretapping of the conversation between Bartnicki and Kane.  *Bartnicki*, 532 U.S. at 525.  If the SPLC Defendants' interpretation of *Bartnciki* were correct, there would have been no need for the opinion at all;  nor for the *Boehner v. McDermott* and *Jean v. Massachusett*s

8

*Police* opinions. The SPLC Defendants are attempting to impose an artificial bright line construction on *Bartnicki* that contravenes its manifest rationale.

This attempt leads to their error of denying that *Bartnciki* prescribes a balancing test. SPLC Br. at 29. Here again they contradict *Bartnicki's* explicit text. *See* 550 U.S. at 532: "Accordingly, it seems to us that there are important interests to be considered on *both* sides of the constitutional calculus. In considering that balance . . . "; and *id.* at 536 (Breyer concurrence). The *Boehner v. McDermott, Jean*, and other courts also explicitly applied a balancing test. It is appropriate, accordingly, that the Court give weight to the special duties applicable to the SPLC, a law firm and a 501c3 nonprofit, and to the First Amendment-enhanced privacy considerations applicable to affiliations with unpopular organizations, as explained in Allen's initial brief.

The SPLC Defendants' interpretation of the cases on which it relies is also faulty. *Smith v. Daily Mail Publ'g Co.* 443 U.S. 97 (1979), *Florida Star v. B.J.F.,* 491 U.S. 524 (1989), *New York Times Co. v. United States,* 403 U.S. 713 (1971), and *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829 (1978) were all addressed by the Supreme Court in *Bartnicki*. The Court, accordingly, took into account whatever impact they merited on the *Bartnicki* privilege. *O'Donnell v. CBS, Inc*. 782 F.2d 1414 (7th Cir. 1986) and *Zerilli v. Evening News Ass'n*, 628 F.2d 217 (D.C. Cir. 1980) were issued by Circuit Courts and predated *Bartnicki* by 15 and 20 years

respectively.  In *Bowley v. City of Uniontown Police Dep't*, 404 F.3d 783 (3rd Cir. 2005), there is no suggestion that the police officer was bribed or induced to breach his duty of confidentiality by the newspaper, unlike the SPLC Defendants' unlawful actions in this case.  *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991) and *United States v. Morrison*, 844 F.2d 1057 (4th Cir. 1988), predated *Bartnicki* by a decade and do not address many of the factors weighed by the *Bartnicki* Court.  In *Republic of Kazakhstan v. Does 1-100*, 2015 WL 6473016 (S.D.N.Y. Oct. 27, 2015), the court stated that "[t]he fact that Respublika [an online newspaper not a party to the case] may have used or posted certain of the Stolen Materials on its website, is not, without more, sufficient to subject it to the Injunction."  *Id.* at * 2.  In this case, Allen has alleged much more than that the SPLC Defendants merely used stolen materials.  Moreover, the *Kazakhstan* opinion allowed the plaintiff discovery into the publisher's involvement.  *Id.*

Finally, regarding the public concern issue, the SPLC Defendants do not directly respond to Allen's arguments that (1) First Amendment doctrine robustly protects the privacy of membership information of unpopular groups and (2) even assuming Allen's membership information were a matter of public concern, it does not follow that *all* the stolen Dilloway information the SPLC used against Allen was a matter of public concern.  The SPLC Defendants' only response is to cite *Rosenblatt v. Baer*, 383 U.S. 75 (1966), for the proposition that the general public

10

has an interest in the "qualifications and performance of all government employees." SPLC Br. at 30.

But this response reveals the SPLC Defendants' true aims. They have never asserted, and cannot assert, that Allen's performance as a lawyer has lacked competence. And, given the protections provided public employees' exercise of their First Amendment rights, they cannot – nor have they attempted to – establish that the private views Allen held, or once held, disqualified him to hold his position at the City of Baltimore law department. *See, e.g., Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 (1990) ("The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate."). The SPLC Defendants have shown their true colors: they were not seeking to address an issue of public concern, but to fundraise and destroy a man they regarded as their political enemy.

## III. ALLEN'S COMPLAINT PLEADED VIABLE CLAIMS FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE, NEGLIGENT SUPERVISION, AND RESTITUTION IN ACCORDANCE WITH THE *HUSTLER / FOOD LION* DOCTRINE

Allen in his opening brief supported three arguments why his claims for tortious interference with prospective advantage, negligent supervision, and restitution were not barred by the *Hustler / Food Lion* doctrine. The SPLC Defendants do not squarely confront any of them.

11

As to Allen's first argument, i.e., that he was not required to allege and prove falsity as to these tort claims, the SPLC Defendants merely repeat their conclusion that Allen's tort claims are "functionally identical" to "his defamation claim." SPLC Br. at 36. They then cite, in addition to *Food Lion* and *Hustler* (which Allen discussed in his opening brief), four cases: *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191 (8th Cir. 1994), *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099 (D.D.C. 1991), *Desnick v. ABC*, 44 F.3d 1345 (7th Cir. 1995), and *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990). But as Allen noted in his initial brief, there are types of nondefamation claims in which the gravamen of the claim is not the truth or falsity of the publication *but how the information in the publication was obtained, e.g., through illegal wiretapping or breach of a confidentiality agreement.* Imposing a falsity requirement on these claims is not required by *Food Lion* or *Hustler* and creates illogical and unfair results. None of the cases cited by the SPLC Defendants involved these types of claims. Their cases, accordingly, do not undermine Allen's first argument.

A more apposite case on this point is *Veilleux v. National Broadcasting Co., et al.*, 206 F.3d 92 (1st Cir. 2000). In *Veilleux*, a truck driver and his employer sued a television broadcaster and others for, *inter alia*, defamation and misrepresentation, alleging the defendants had (1) portrayed the plaintiffs in a distorted manner in the

defendants' broadcast report about the perils caused by tired long-distance truck rivers, and (2) misrepresented to the plaintiffs (who had cooperated in the production of the report) that the defendants would not include in the report the views of an organization called Parents Against Tired Truckers ("PATT"). On appeal after jury verdicts for the plaintiffs, the First Circuit upheld the defendants' First Amendment challenge as to (1) but denied it as to (2). At no point did the First Circuit suggest that, as to (2), the plaintiffs needed to prove falsity -- which would have been illogical and even impossible, since the views of PATT included in the report were, by all accounts, accurately presented. *Id.* at 126-29.

The SPLC Defendants' argument against Allen's unjust enrichment claim, like the defendants' other *Food Lion / Hustler* arguments, rests on the false premise that Allen's tort claims are merely disguised defamation claims. Not so, and constant repetition does not make it so. Allen's unjust enrichment claim is grounded on the nature of restitution / unjust enrichment and of the SPLC Defendants' conduct exclusive of any defamation. *Berry and Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000), states the applicable general principle: "A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment." The phrase "receives a benefit by reason of an infringement of another person's interest" aptly describes what the SPLC Defendants did to Allen.

Allen has concretely and plausibly alleged that Beirich, improperly using the gravitas of the SPLC's 501c3 status, orchestrated his termination by exploiting her media contacts, sending press releases to a dozen news media about her August 17 Article. It is elementary common sense that creating a media furor as Beirich did bolstered the SPLC's renown and added substantially to the donation river into the SPLC's bulging coffers. The SPLC thus unethically and unscrupulously infringed on Allen's rights and interests to further its own financial interests, and should be required to disgorge its ill-gotten gains.

Responding to Allen's second argument, i.e., that he alleged occupational or pecuniary as well as reputational damages, the SPLC Defendants argue that *Cohen v. Cowles Media* does not support his right to such damages. Their argument rests on a tortured interpretation of *Cohen* no court has ever adopted. Contrast this to the six cases, two from the Fourth Circuit, Allen cited in his initial brief, all holding that nonreputational or occupational damages are carved out from the purview of the *Food Lion / Hustler* doctrine. *See also Ruzicka v. Conde Nast Publications, Inc.*, 999 F.2d 1319, 1323 (8th Cir. 1993) (interpreting *Cohen* and allowing claim against magazine for compensatory damages where magazine article included information in violation of a promise of confidentiality).

The SPLC Defendants do not address Allen's third argument, i.e., that the *Hustler / Food Lion* First Amendment defenses should not be extended to the SPLC

Defendants, except to assert, citing *Gentile v. State Bar Ass'n of Nevada*, 501 U.S. 1030 (1991), that "lawyers enjoy First Amendment protection for their speech just like everyone else" and "Nor is there any basis for some lesser First Amendment protection of non-profit speakers." SPLC Br. at 29. But they badly misread *Gentile*. *Gentile* and other Supreme Court cases make clear that lawyers are subject to greater restrictions on their First Amendment rights than nonlawyers. Allen Opening Br. at 37. And as to "non-profit speakers," there *is* a basis, and a strong one, for limiting First Amendment protection for a purported 501c3 public interest law firm – namely I.R.S. requirements, *see, e.g.,* Revenue Procedure 92-59 (1992), 1992 WL 509835. The SPLC Defendants completely ignore their obligations under the Alabama Rules of Professional Conduct and I.R.S. regulations. They act as though they were a tabloid newspaper and not the tax-favored 501c3 public interest law firm they actually are.

## IV. THE SPLC DEFENDANTS' OWN STATEMENTS, AND THE SPLC'S STATUS AS A 501C3 NONPROFIT, SHOW THAT THEIR DEFAMATORY ACCUSATIONS AGAINST ALLEN IN THE SPLC'S HATE MAP FLYER WERE NOT MERE HYPERBOLE AND RHETORIC

The SPLC Defendants do not deny that their statements in the Hate Map Flyer centered squarely on Allen in his profession as an attorney and that they accused him of race hatred in his profession. There is no attempt to rebut Allen's argument from *Taylor v. Carmouche*, 214 F.3d 788, 793 (7th Cir. 2000), which stated that such an

allegation is susceptible of easy proof ("a mundane fact litigated every day in federal court").  In fact, the SPLC Defendants do not even mention *Taylor v. Carmouche* anywhere in their brief.

The SPLC Defendants do not dispute that in their Hate Map Flyer they deliberately omitted facts about Allen – such as his abundant *pro bono* work on behalf of black men like Arthur Lloyd and Peter Sutro Waine, or his establishment, with his family, of a scholarship for American Indians, or his mentoring of a black youth, D'Andre Johnson (JA 28-30) -- facts contrary to the narrative they wished to promote for purposes of fundraising.  Citing *Harte-Hanks v. Connaughton*, 491 U.S. 657 (1989), Allen had argued that the SPLC Defendants could not shut their eyes to purposefully avoid the truth, because such deliberate omissions are the hallmarks of Constitutional Malice (i.e. "actual malice" under *New York Times v Sullivan*).  *Id.* at 692-93.   In another concession, they do not even mention *Harte-Hanks v. Connaughton* in their brief.

The SPLC Defendants do not dispute the SPLC is a respected law firm and 501(c)(3) organization subject to regulations, such as 1.501(c)(3)-1(d)(3) of the Income Tax Regulations, that forbid "substantial use of inflammatory and disparaging terms" or the expression of "conclusions based more on strong emotional feelings than of objective evaluations." JA 67.  And they do not deny that

the word "infiltrate" has a specific and well understood meaning, which in its usual sense is *not* construed as a mere figure of speech.

Instead, the SPLC Defendants attempt to retreat to the high ground of "hyperbole and lusty, imaginative speech," as though this route were still open to them. It is not.

Assuming the Court could overlook their flouting of applicable regulations and ethical rules prohibiting their use of "inflammatory and disparaging terms," the Hate Map Flyer itself explicitly proclaims it is a "leading source for reliable analysis" rather than reckless rhetoric and hyperbole. And despite mixing in inflammatory attacks, the Hate Map Flyer is quite factual. Any reasonable reader would note its factual content and receive it as the "reliable analysis" it purports to be, *e.g.*, the recounting of a $21.5 Million verdict won by the SPLC in 1998 in South Carolina and the 2005 imprisonment of a leader of a Texas group called "Ranch Rescue." These appear as readily verifiable events, not mere "rhetoric or hyperbole." The attack on Allen is included among these factual recitations.

Indeed, to gauge how duplicitous the argument for "rhetoric and hyperbole" is, the Court need but compare different sections of the SPLC Defendant's brief. At page 11, they claim they have merely published "an accurate news report" and that the Hate Map Flyer is "a later characterization" of that allegedly "accurate news report." But at page 32, the mask drops as they invoke *Old Dominion Branch No.*

17

*496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 US 264 (1964). No longer "reliable" (JA 121), the SPLC Defendants admit that, in reality, they speak "bluntly and recklessly." *Letter Carriers* at 272. They drop the pretense they are an "accurate reporter of news," or the purveyor of "expert and reliable analysis," and demand the Court treat them as though they were operating in the midst of a heated labor dispute. They seek unbridled license to indulge in "bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions." *Id.*

The Court should not permit such a two-faced approach. Either the SPLC is a respected law firm, respectable because it honors its ethical mission and its 501(c)(3) status, or it is something far less dignified, in which case it should not sidle up to the Court and quietly stress how earnest and trustworthy other courts have found it to be (e.g., SPLC Br. at 4 and 5). The reality, of course, is that the SPLC is a reckless thug, masquerading as a respectable organization. But the Court should not permit them to slip between the two guises: either they admit, in their fundraising appeals to donors, that their attacks on Allen and other decent men are in fact reckless distortions and need not be taken seriously; or they should be held accountable for their flagrant violations of their 501(c)(3) status.

Allen will briefly address two other points. First, to the extent the Hate Map Flyer defamed Allen by implication, he easily clears both hurdles of *Chapin v.*

18

*Knight-Ridder, Inc*. 993 F.3d 1087, 1092-1093 (4th Cir. 1993). (Bizarrely, the SPLC Defendants' argument at this section of their brief focuses almost entirely on the August 17 Article, rather than the later Hate Map Flyer which is at issue.) For the reasons above, the Hate Map Flyer not only can reasonably be read to impart the false innuendo that Allen was a neo-Nazi lawyer who had abused his position with the City of Baltimore, but that is perhaps *the only* way to read it. And clearly the SPLC Defendants intend and endorse that position, which is why they gloated over Allen's firing in the Hate Map Flyer.

Finally, any "opinion" defense for the Hate Map Flyer is dead on arrival. The Hate Map Flyer contained almost no facts about Allen, save the scurrilous charge he was a neo-Nazi lawyer who had infiltrated the City of Baltimore's law department. In this respect, it was even more deficient than the earlier August 17 Article. JA 121-122. The SPLC must, perforce, concede that their statements in the Hate Map Flyer were accompanied by a factual recitation which was, at best, "incomplete" – if not intentionally dishonest. Per *Milkovich v. Lorain Journal Co*, 497 US 1, 19 (1990): "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact."

**V. ALLEN'S RICO CAUSES OF ACTION WERE PROPERLY PLED, BUT EVEN IF THIS COURT DISGAREES, PRECEDENT FAVORS LEAVE TO RE-PLEAD.**

The SPLC Defendants do not dispute that their actions evince Constitutional Malice (i.e. "knowing falsehood or reckless disregard for the truth"). Allen had therefore argued that the District Court committed error by invoking *Smithfield Foods, Inc. v. United Food & Comm. Workers, Int'l Union*, 585 F. Supp. 2d. 815, 821-822 (ED Va. 2008) to dismiss his RICO claims. That case held only that the plaintiffs needed to demonstrate Constitutional Malice at trial on the RICO counts. The SPLC neither disputes this argument, nor mentions *Smithfield Foods* anywhere in their brief, thus conceding the field.

Allen also argued that the trial court imposed too heavy a standard on the RICO claims. Citing to the Second Circuit's "*Anza V*" case (*Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310 (2nd Cir. 2011)), Allen stressed that even RICO pleading is measured by the *Twombly* standard and, therefore, Allen's RICO claims need only plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Id*. at 323-24 (quotations omitted). The SPLC Defendants insist the District Court correctly applied *Twombly* – but fail to discuss *Anza V* anywhere in their brief.

And perhaps most significantly, the SPLC Defendants nowhere oppose Allen's argument that, even if there were some technical defects in the RICO

pleading, any dismissal should be with leave to re-plead. This Court has indicated this is the normal procedure, rather than the hurried finality of the District Court's dismissal with prejudice. *E.g., Chisolm v. TranSouth Financial Corp.*, 95 F.3d 331, 338 (4th Cir.1996).

Rather than meet Allen's arguments, the SPLC Defendants wander off into irrelevancies apparently designed to camouflage their many surrenders. First, they retreat to their erroneous argument that *Bartnicki* provides blanket protection for the crimes they committed in obtaining the Dilloway Stolen information. That argument fails for the reasons above.

They next complain they could not have violated the National Stolen Property Act, ("NSPA") nor bribed a public official for their role in the Dilloway Stolen Documents. Even if true, this contention would leave room to construe several other RICO predicates out of the SPLC's role in the Dilloway Stolen Documents (receipt of stolen property under §13A-8-16 of the Alabama Criminal Code and violations of the Travel Act, 18 U.S.C. §1952 – see JA 73). In any event, their arguments lack merit. They contend the NSPA cannot apply because there was no commercial market for the Dilloway Stolen Documents, citing *In re Vericker*, 446 F.2d 244 (2nd Cir. 1971). But the SPLC, if not other self-appointed "watch dog" groups, clearly has a monetary interest in the Dilloway Stolen Documents, which is why it paid over $5,000 for their acquisition. JA 73. As *Vericker* itself noted, documents can

21

certainly qualify as goods within the scope of 18 USC § 2314. *Vericker* at 248; *see also United States v. Farraj*, 142 F. Supp. 2d 484, 487 (S.D.N.Y. 2002); *United States v. Bottone*, 365 F.2d 389 (2nd Cir. 1966). The key is whether the documents were created for a commercial purpose and carry an "inherent commercial value *at least as to the persons directly interested in the matter*." *Farraj,* 142 F. Supp. 2d at 487-88 (emphasis supplied). Here the Dilloway Stolen Documents were created for a commercial purpose and have an inherent commercial value, not least to the SPLC. JA 73, and 37 at ¶¶68-69.

The SPLC Defendants also muddy the water by arguing they could not have committed "bribery" in their interactions with Dilloway, presumably because Dilloway was not a public official, nor did his theft concern the integrity of public deeds. SPLC Br. at 44. This is a red herring. The RICO predicate here was not "bribery" but "commercial bribery." JA 73. It is well settled that "commercial bribery" can be a predicate act for RICO purposes. *United States v. Parise*, 159 F.3d 790, 803 (3rd Cir. 1998).

Next, the SPLC Defendants trot out the already refuted argument (JA 147-49) that Allen's RICO predicates of mail and wire fraud are "thinly disguised defamation claims" and therefore cannot form the basis for a RICO claim. SPLC Br. at 45-46. The SPLC's lengthy string citation here largely derives from an unreported disposition in the Southern District of New York, *Kimm v. Lee*, 2005 WL 89386,

22

(S.D.N.Y. Jan. 13, 2005), *aff'd*, 196 Fed. Appx. 14 (2nd Cir. 2006).  Most of the cases in the SPLC's string citation are either cited by *Kimm* or cite to *Kimm.* With this unreported disposition in hand, the SPLC Defendants assure this Court that "for more than 30 years courts universally have held defamation in the form of mail fraud and wire fraud cannot possibly serve as RICO predicate acts."

But it is not so.  *Frydman v. Verschleiser*, 172 F. Supp. 3d 653 (S.D.N.Y. 2016) disproves it.  *Frydman* was a RICO case alleging six predicate acts of mail and wire fraud.  *Id.* at 659.  Notably, four of those six predicates were perpetrated *as defamations* over the mails or wires of the plaintiff's business.  *Id.* at 660–61.  In denying dismissal of the RICO claim, the Southern District specifically distinguished *Kimm* along lines applicable here, i.e., because there was reliance on the truth of the SPLC's false statements, and as result, Allen was denied property within the meaning of RICO.  *Id* at 669–70 (citations omitted).  The SPLC's string citation rests on a misreading of the case law.

Finally, the SPLC Defendants argue Allen cannot show a RICO pattern.  In mounting this argument, they offer no rebuttal of the point made at page 49 of Allen's brief, i.e., that the District Court left at least two predicate acts standing in (1) the criminal activity surrounding the Dilloway Stolen Documents and (2) the IRS Form 990 from Tax Year 2016.  They contend, however, that Allen cannot show an open-ended pattern.  Ignoring the IRS Form 990 violation, they reason that the SPLC

Defendants' interactions regarding the Dilloway Stolen Documents all occurred in the past and cannot suggest a threat of repetition. This misreads the rule on (open-ended) continuity.

The rule is that "Open-ended continuity may be established where… the 'related predicates themselves involve a distinct threat of long-term racketeering activity, *or where the predicate acts 'are part of an ongoing entity's regular way of doing business* . . . or of conducting or participating in an ongoing and legitimate RICO enterprise.'" *GE Investment Private Place Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (emphasis added). Allen has concretely and plausibly alleged that criminal activity is part and parcel of the SPLC's "regular way of doing business." His complaint identifies a persistent pattern of criminality extending over several years, aimed at thousands of individuals. JA 16-17, 37, 54-63, 74-76; *Morley v Cohen*, 888 F.2d 1006, 1010-1011 (4th Cir. 1989).

Furthermore, even if the Court were inclined to jettison all the mail fraud allegations (save the IRS Form 990 for Tax Year 2016), the criminality surrounding the Dilloway Stolen Documents remains. There is no reason to suppose such criminality was an isolated event. Allen's complaint makes clear that the SPLC Defendants have for years used a vast network of spies and informers, and paid numerous other individuals to disclose secrets against various entities and associations the SPLC hypocritically labels as "hate groups." JA 37. Drawing all

24

inferences in favor of Allen, as this Court must, it is highly unlikely the criminal activity surrounding the Dilloway Stolen Documents will prove an isolated instance rather than the SPLC Defendants' regular way of doing business – hence the "payments to disqualified persons" referenced in Allen's pleadings at JA 37. Allen has surely pled enough facts to raise a reasonable expectation discovery will confirm other criminality. *Anza,* 652 F.3d at 324.

## VI. ALLEN PROPERLY PLEADED HIS TORTIOUS INTERFERENCE WITH CONTRACT AND AIDING AND ABETTING BREACH OF CONTRACT CLAIMS

Allen and the SPLC Defendants largely agree on two legal principles applicable to his tortious interference with contract claim. The first is that a tortious interference claim based on the defendant's interference with the plaintiff's rights as a third-party beneficiary is recognized in Maryland, as elsewhere. *See, e.g., Baron Financial Corp. v. Natanzon*, 471 F. Supp. 2d 535, 540 (D. Md. 2006). The second is that a party's right as a third-party beneficiary is a question of the intent of the contracting parties. *Id.* at 541 n. 4. They disagree, however, on whether Allen's allegations satisfy *Twombly* pleading standards as to his status as a third-party beneficiary of the NA – Dilloway confidentiality agreement.

In assessing Allen's third-party beneficiary allegations, it is critical to adhere to the proper standard of review. Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the

defendant fair notice of what the claim is and the grounds on which it rests." *Wright v. North Carrolina*, 787 F.3d 256, 263 (4ᵗʰ Cir. 2015) (internal quotation marks and citations omitted). Further, to survive a motion to dismiss, a plaintiff need not demonstrate that his right to relief is probable or that alternative explanations are less likely. *Houck v. Substitute Trustee Services, Inc*., 791 F.3d 473, 484 (4ᵗʰ Cir. 2015).

Allen's third-party beneficiary allegations meet this standard. He has described when the confidentiality agreement was created, who the parties were, and its general nature. He has described a context in which doxxing – the malignant practice of obtaining and using private and confidential information about people to harm them socially, vocationally, and emotionally – has been a powerful and known weapon the SPLC Defendants have employed for many years in the culture wars. He has described how the SPLC Defendants have had the NA in their cross hairs for decades and have written numerous tabloid-style articles attacking the NA. The parties to the NA – Dilloway confidentiality agreement had every reason to fear the SPLC would seek to use information to which Dilloway had access to harm anyone with any links to the NA, even purchasing books on history.

On less plausible allegations courts have correctly allowed discovery into the factual question of whether a party was an intended third-party beneficiary. *See Sher v. SAF Financial, Inc.*, No. RDB 10-1895, 2010 WL 4034272 (D. Md. Oct. 14, 2010)

26

at * 9; *Southridge Capital Management, LLC v. Lowry*, 188 F. Supp. 2d 388, 397 (S.D.N.Y. 2002); *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress,* 735 Fed. Appx. 241, 246 (9th Cir. 2018), *affirming* 214 F. Supp. 3d 808, 832 (N.D. Cal. 2016). *See also United States v. Thompson,* 562 F.3d 387, 394-95 (D.C. Cir. 2009) (according third party standing to enforce confidentiality agreement); *Perdue Farms v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., No. 04-1176, 2005 WL 1316959 (4th Cir. June 2, 2005) at *2 (noting plaintiff had prevailed at trial as third-party beneficiary of a confidentiality agreement). This same conclusion is appropriate here.

The SPLC Defendants did not address Allen's aiding and abetting breach of contract claim, but it is viable for the reasons set forth in Allen's initial brief.

27

## CONCLUSION

For the reasons stated, Allen requests that the District Court's November 13, 2019 opinion and order be reversed and the case remanded for further proceedings.

Respectfully Submitted,

/s/ Glen K. Allen
Glen K. Allen
GLEN K. ALLEN LAW
502 Edgevale Road
Baltimore, MD 21210
(410) 802-6453

/s/ Frederick C. Kelly, III
Frederick C. Kelly, III
LAW OFFICE OF
  FREDERICK C. KELLY
One Harriman Square
Monroe, NY 10950
(845) 294-7945

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts

of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

statement, table of contents, table of citations, statement regarding oral

argument, signature block, certificates of counsel, addendum, attachments):

this document contains 6,475 words.

2.    This document complies with the typeface requirements because:

this document has been prepared in a proportional spaced typeface

using Microsoft Word in 14 point Times New Roman.

Dated:  May 11, 2020                    Respectfully submitted

/s/ Glen K. Allen
Glen K. Allen
GLEN K. ALLEN LAW
502 Edgevale Road
Baltimore, MD 21210
(410) 802-6453

/s/ Frederick C. Kelly, III
Frederick C. Kelly, III
LAW OFFICE OF
  FREDERICK C. KELLY
One Harriman Square
Monroe, NY 10950
(845) 294-7945

*Counsel for Appellant*